



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 9, 2019**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 18-43360-MXM |
| CKURTIS AH-MAAD ANDERSON AND | § | |
| NAOMI RENEE ANDERSON, | § | |
| | § | CHAPTER 13 |
| DEBTORS. | § | |

**MEMORANDUM OPINION AND ORDER SUSTAINING IN
PART AND OVERRULING IN PART THE TRUSTEE'S OBJECTION
TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN**
*[RELATES TO ECF NOS. 24 and 27]*

Before the Court is confirmation of the Debtors' Plan.[1] The Trustee filed an Objection[2] to confirmation, asserting that the Debtors' Plan fails to satisfy (i) the "disposable income" requirement of 11 U.S.C. § 1325(b)(1)(B), and (ii) the "best interest of creditors" test of 11 U.S.C. § 1325(a)(4).[3]

---

[1] *Amended Debtor's(s') Chapter 13 Plan* [ECF No. 24] (the "***Plan***") filed by Ckurtis Ah-Maad Anderson and Naomi Renee Anderson (the "***Debtors***"). *See also* Debtors' Ex. 2 and Trustee's Ex. 1.

[2] *Trustee's Amended Objection to Confirmation* [ECF No. 27] (the "***Objection***") filed by Pam Bassel, Standing Chapter 13 Trustee (the "***Trustee***").

[3] The Trustee's Objection asserts that the Debtors' total equity in non-exempt property is approximately $3,842.39 as opposed to the $1,742.39 reflected in the Plan, thereby violating the "best interest of creditors" test of § 1325(a)(4). The Trustee did not prosecute this objection during the hearing or in her post-hearing briefing. To the extent this objection

After considering the Plan, the Objection, the Trustee's Brief,[4] the Debtors' Response Brief,[5] the Trustee's Reply Brief,[6] the testimony of witnesses, the exhibits admitted into evidence, other pleadings filed in this case as referenced herein, and the arguments of counsel, the Court finds and concludes that the Trustee's Objection should be sustained in part and overruled in part as detailed below.

## I. OVERVIEW

The Trustee raises three arguments in support of her Objection, two of which are resolved.[7] The remaining issue is a dispute over the Debtors' monthly deduction for "transportation ownership cost" when calculating the Debtors' projected "disposable income" under 11 U.S.C. § 1325(b). The Trustee argues that the Debtors are entitled to deduct only their *actual* monthly transportation ownership cost of $65.38,[8] while the Debtors argue that they are entitled to deduct the full *allowance* of $497.00[9] listed on the applicable table of the "Local Standards" issued by the Internal Revenue Service ("***IRS***").

The Trustee's position is that the applicable "Local Standards" are comprised of not only the figures listed in the applicable tables issued by the IRS, but also the supplemental guidelines that accompany the tables. Those guidelines arguably limit the Debtors' Local Standards transportation ownership cost deduction to the lesser of (i) the amount provided in the applicable table, or (ii) the Debtors' actual expense. The Debtors' position, on the other hand, is that the supplemental

---

was not resolved by stipulation, the Court overrules it.

[4] *Trustee's Brief in Opposition to Confirmation of Chapter 13 Plan* [ECF No. 41] (the "***Trustee's Brief***").

[5] *Brief of the Debtors Regarding Means Test Calculation of Projected Disposable Income Objection by Chapter 13 Trustee* [ECF No. 42] (the "***Debtor's Response Brief***").

[6] *Trustee's Reply Brief in Opposition to Confirmation of Chapter 13 Plan* [ECF No. 43] (the "***Trustee's Reply Brief***").

[7] See footnotes 3 and 15.

[8] Trustee's Brief at 4; *see also* Debtors' Ex. 1 (Form 122C-2, line 13b [$3,922.38 ÷ 60 months = $65.38]) *see also* 11 U.S.C. § 707(b)(2)(A)(iii).

[9] Debtors' Brief at 7; *see also* Debtors' Ex. 1 (Form 122C-2, line 13a).

guidelines are not binding and that the Debtors are entitled to deduct the full transportation ownership cost allowance provided in the applicable Local Standards table, even if their actual transportation ownership cost is less.

For all the reasons detailed below, the Court overrules the Trustee's objection regarding transportation ownership cost. The Court concludes that, based on the facts of this case, when calculating their monthly "disposable income" under § 1325(b), the Debtors are entitled to (i) a net monthly deduction of $431.62 as their transportation ownership cost under the Local Standards incorporated in § 707(b)(2)(A)(ii)(I), and (ii) a monthly debt payment deduction of $65.38 under § 707(b)(2)(A)(iii).

## II.  FACTS

The relevant facts in this matter are simple and undisputed. The Debtors filed their joint Chapter 13 Voluntary Petition on August 31, 2018.[10] Listed on the Debtors' schedules is a 2012 Chrysler 300 (the "*Vehicle*") with a remaining outstanding purchase money secured debt of $3,922.88 owed to Wells Fargo Dealer Services.[11]

The Debtors' Form 122C-1 reveals that they are above-median income earners,[12] and Form 122C-2 reflects that their asserted monthly disposable income is $115.58,[13] with a resulting unsecured creditors' pool of $6,934.80. Both of those figures are carried over and reflected in the Debtors' Plan.[14]

---

[10] ECF No. 1. Included with their Voluntary Petition, the Debtors also filed their Schedules, Statement of Financial Affairs, Form 122C-1, and Form 122C-2. Form 122C-2, commonly known as the "means test," is a standardized form that is used to determine the amount of disposable income that a debtor is able to pay to unsecured creditors.

[11] *See* ECF No. 1, Schedules B and D.

[12] See ECF No. 1, Debtors' Ex. 1 and Trustee's Ex. 2.

[13] *Id*.

[14] *See* ECF No. 24, Debtors' Ex. 2 and Trustee's Ex. 1.

The Trustee argues that the Plan violates the "disposable income" requirement of § 1325(b)(1)(B).[15] According to the Trustee, the Debtors understated their projected disposable income because they deducted the full transportation ownership cost of $497.00 listed in the Local Standards table, as opposed to limiting their deduction to their *actual* monthly transportation ownership cost of $65.38. This alleged $431.62[16] overstatement of allowable monthly transportation ownership cost resulted in a corresponding understatement of the Debtors' monthly disposable income, in turn causing a $25,897.20 understatement of the required unsecured creditor pool in the Plan.[17]

### III. LEGAL ANALYSIS

Although the legal question before the Court appears simple and straight forward – the answer, not so much. As detailed in the Trustee's and Debtors' extensive briefs,[18] the parties cited over eighty court opinions along with many other secondary sources to support their respective positions. Rather than diving into the maze of differing analyses performed by other courts and commentators, this Court will begin by reviewing the relevant Bankruptcy Code sections.[19]

---

[15] In the Objection, the Trustee argues that the Plan violates the "disposable income" requirement for two reasons. First, the Trustee argues that, when calculating their monthly disposable income (as reflected on Form 122C-2), the Debtors understated their gross monthly income by $214.66 because their actual monthly income of $9,643.81 reflected on Schedule I ($3,210.05 - Mr. Anderson + $6,391.99 - Ms. Anderson + $41.67 - Vinyl Designs listed on line 9) exceeds their average monthly income of $9,429.15 derived during the six full months prior to filing bankruptcy reflected on Form 122C-1. During the hearing, however, the Debtors agreed and stipulated to amend their Plan to cure this first objection by increasing their monthly disposable income from $115.58 to $330.24, with a corresponding increase of the unsecured creditors' pool to $19,814.40. Therefore, the Court finds that the Trustee's first disposable-income objection was resolved by agreement of the parties. The Trustee's second disposable-income objection, however, is the primary issue addressed in this Memorandum Opinion and Order.

[16] $497.00 - $65.38 = $431.62; *see also* Debtors' Ex. 1 (Form 122C-2, line 13c).

[17] Trustee's Brief at 4.

[18] The parties' briefs total over 50 pages of single-space type.

[19] *See, e.g.*, *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 69 (2011) (interpretation of the Bankruptcy Code starts "where all such inquiries must begin: with the language of the statute itself"); *U.S. v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241 (1989) (same).

### A.      APPLICABLE BANKRUPTCY CODE SECTIONS

The Bankruptcy Code sections relevant in this dispute are §§ 1325(b) and 707(b)(2)(A), which were enacted in 2005 as part of BAPCPA.[20]

#### 1.  11 U.S.C. § 1325(b)

The analysis begins with § 1325(b)(1)(B), which provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan— . . . (B) the plan provides that all of the debtor's projected *disposable income* to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan.[21]

Section 1325(b)(2) defines "disposable income" in relevant part as "current monthly income received by the debtor . . . less *amounts reasonably necessary to be expended* . . . for the maintenance or support of the debtor or a dependent of the debtor . . . ."[22]  Section 1325(b)(3) then directs that, for above-median-income debtors, the "*amounts reasonably necessary to be expended* . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)."[23]  Therefore, § 1325(b)(3) incorporates the means test for determining the allowable expense deductions when calculating "disposable income" for above-median-income debtors.

#### 2.  11 U.S.C. § 707(b)(2)(A)

Section 707(b)(2)(A) sets out the means test for presumed abuse in filing a Chapter 7 petition.  The means test requires consideration of "the debtor's current monthly income *reduced by the amounts determined under clauses (ii), (iii)*, and (iv), and multiplied by 60."[24]  Amounts

---

[20] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (2005).

[21] 11 U.S.C. § 1325(b)(1)(B) (emphasis added).

[22] 11 U.S.C. § 1325(b)(2)(A)(i) (emphasis added).

[23] 11 U.S.C. § 1325(b)(3) (emphasis added).

[24] 11 U.S.C. § 707(b)(2)(A)(i) (emphasis added).

5

determined under clause (ii) are set out in the IRS standards, whereas amounts determined under clause (iii) are payments on secured debts. Amounts determined under clause (iv) are expenses for priority claims, which are not relevant here. Read together, the amounts determined under clauses (ii), (iii), and (iv) "allow a debtor to deduct from current monthly income those expenses set out in the IRS standards, and also any payments on secured debt that will come due in the sixty months after the petition date."[25] Each of these clauses authorizes a deduction as "a stand-alone expense."[26]

### i. Clause (ii)

Section 707(b)(2)(A)(ii)(I) provides, in pertinent part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and *Local Standards*, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses *issued by the Internal Revenue Service* for the area in which the debtor resides, *as in effect on the date of the order for relief*, for the debtor . . . . Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.[27]

The specific "monthly expense" at issue under clause (ii) is the Debtors' transportation "ownership cost," which falls within the "Local Standards" issued by the IRS.[28] Because the Debtors' Vehicle was subject to an outstanding purchase money secured debt on the date of their bankruptcy filing, the Debtors are entitled to a deduction for transportation "ownership cost" under the Local Standards.[29] The Court's analysis of the allowed amount of the deduction under clause (ii) in this case is addressed in Section III. B of this Memorandum Opinion and Order.

---

[25] *Drummond v. Welsh (In re Welsh)*, 465 B.R. 843, 849 (9th Cir. BAP 2012); *see* 6 COLLIER ON BANKRUPTCY ¶ 707.04[3] [c] at 8-9 (16th ed. 2019).

[26] *In re Welsh*, 465 B.R. at 849.

[27] 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

[28] The IRS Local Standards address a debtor's Housing and Utilities costs and Transportation costs. Transportation costs are then further divided between "Ownership costs" and "Operating costs." The specific dispute in this case involves the IRS Local Standards for the Debtors' Vehicle "Ownership costs."

[29] *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 66 (2011).

      *ii.     Clause (iii)*

Section 707(b)(2)(A)(iii), on the other hand, provides in pertinent part:

> The debtor's average monthly payments on account of *secured debts* shall be calculated as the sum of –
>
> (I)    The total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and
>
> (II)   Any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's . . . motor vehicle . . . necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.[30]

Pursuant to clause (iii), the Debtors' allowed deduction for their "average monthly payments" on account of the Vehicle's secured debt is $65.38.[31]

### B.    § 707(b)(2)(A)(ii)(I) - "LOCAL STANDARDS" ISSUED BY THE IRS

#### 1. *The Allowable Expense Tables constitute the "Local Standards" issued by the IRS*

Although neither the Bankruptcy Code nor the IRS defines the term "Local Standards," the United States Supreme Court in *Ransom* concluded:

> The National and Local Standards referenced in [707(b)(2)(A)(ii)(I)] are *tables* that the IRS prepares listing standardized expense amounts for basic necessities.(footnote omitted) The IRS uses the Standards to help calculate taxpayers' ability to pay overdue taxes. See 26 U.S.C. § 7122(d)(2). The IRS also prepares supplemental guidelines known as the Collection Financial Standards, which describe how to use the tables and what the amounts listed in them mean.
>
> . . . .
>
>    . . . Although *the statute does not incorporate the IRS's guidelines*, courts may consult this material in interpreting the National and Local Standards; . . . The

---

[30] 11 U.S.C. § 707(b)(2)(A)(iii) (emphasis added).

[31] Trustee's Brief at 4; *see also* Debtors' Ex. 1 (Form 122C-2, line 13b [$3,922.38 ÷ 60 months = $65.38]); *see also* 11 U.S.C. § 707(b)(2)(A)(iii).

7

*guidelines of course cannot control if they are at odds with the statutory language.*[32]

Although the Supreme Court declined to resolve the specific issue currently before this Court,[33] *Ransom* unambiguously stated in the text just quoted that (a) the "Local Standards" referenced in § 707(b)(2)(A)(ii)(I) are the Allowable Expense Tables, (b) the statute *does not* incorporate the IRS guidelines, and (c) courts may consult the guidelines when interpreting the Allowable Expense Tables, *unless* the guidelines are at odds with the statutory language. When consulting the guidelines, however, it is important to understand that "[t]he IRS's use of the Standards differs in policy and purpose from its application by the Bankruptcy Code."[34] The IRS standards and guidelines "were developed for use by IRS agents when evaluating offers in compromise from tax payers."[35]

### 2. In this case, the guidelines are at odds with § 707(b)(2)(A)(ii)(I) and 707(b)(2)(A)(iii)

Addressing a debtor's vehicle ownership cost deduction, the guidelines state: "When determining the allowable amounts, allow the full *ownership* standard amount, or the amount actually claimed and <u>verified</u> by the taxpayer, whichever is less**.**"[36] This statement in the IRS guidelines, however, is at odds with the plain language of § 707(b)(2) for at least three reasons.

---

[32] *Ransom*, 562 U.S. at 66, 72 (emphasis added). The "tables" referenced by in *Ransom* are the *Allowable Living Expense Tables (Collection Financial Standards)* (the "***Allowable Expense Tables***"), which are "web-based" and can be located by following URLs specified in the *Internal Revenue Manual* (the "***IRS Manual***") located at http://www.irs.gov/irm. Although the Allowable Expense Tables are referenced in the IRS Manual, the tables are not actually available on the IRS website. Instead, the IRS website links to yet another IRS website that states, in part: "*Disclaimer: IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are . . . for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program. . . . Please note that the standards change, so if you elect to print them, check back periodically to assure you have the latest version*." *See* https://www.irs.gov/businesses/small-businesses-self-employed/collection-financial-standards. The referenced quote is as of the date of this Memorandum Opinion and Order.

[33] *Ransom,* 562 U.S. at n.8.

[34] *In re Lopez*, 574 B.R. 159, 177 (Bankr. E.D. Cal. 2017).

[35] *Id.* at 163.

[36] I.R.M 5.15.1.10 (alteration in original).

First, clause (ii) of § 707(b)(2)(A) specifically provides that the Debtors are entitled to deduct the "applicable monthly expense amounts specified under the . . . Local Standards," which in this case is $497.00.[37] But clause (ii) goes on to provide: "Notwithstanding any other provision of this clause, the monthly expenses of the debtor *shall not include any payments for debts*."[38] For Bankruptcy Code purposes, therefore, the plain language of § 707(b)(2)(A)(ii)(I) specifically instructs that debtors are allowed to deduct the "applicable monthly expense amounts specified" in the Allowable Expense Tables, but that "payments for debts" must be deducted from such allowed amounts.[39]

So under clause (ii), the Debtors are allowed the full $497.00 monthly vehicle transportation ownership cost provided in the Allowable Expense Tables, but then the Debtors are required to deduct their applicable "payments for debts," which in this case is $65.38, resulting in a net deduction of $431.62. Therefore, the Trustee's position that the Debtors' deduction under clause (ii) is limited to the Debtors' "actual" debt payment of $65.38 is directly contrary to the statute, which specifically excludes such debt payments from the Local Standards addressed in clause (ii). Thus, the IRS guidelines for tax collection purposes are at odds with the plain language of § 707(b)(2)(A)(ii)(I) for bankruptcy purposes.

---

[37] Debtors' Ex. 1 (Form 122C-2, line 13a).

[38] 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

[39] *See, e.g., In re Welsh,* 465 B.R. 843, 849 (9th Cir. BAP 2011) (clauses (ii) and (iii) allow debtor to deduct expenses set out in Local Standards and also payments on secured debt); *In re Lopez*, 574 B.R. at 178-80 (Bankr. E.D. Ca. 2017) (no need to refer to the guidelines because the statute and Form 122C-2 are clear and unambiguous, debtor's monthly expenses shall be the amounts under the Local Standards after deducting the secured payment amount.); *In re Scott,* 457 B.R. 740, 744-48 (Bankr. S.D. Ill. 2011); *see also Lynch v. Jackson,* 853 F.3d 116, 121 (4th Cir. 2017) (plain language of the statute entitles debtor to deduct the full Local Standard amounts even if their actual expenses are less).

Second, the plain language in clause (ii) that applies to the Local Standards does not expressly limit the expenses covered by the Local Standards to the lesser of the Local Standards and "the debtor's actual monthly expenses," as suggested by the Trustee. In addition, within the same sentence of clause (ii) that applies to "Other Necessary Expenses," the statute *expressly* limits these expenses to "the debtor's *actual* monthly expenses."[40] Therefore, the IRS guidelines for tax collection purposes (limiting the expenses covered by the Local Standards to the lesser of the Local Standards or actual monthly expenses) are directly at odds with the plain language of § 707(b)(2)(A)(ii)(I), which applies in bankruptcy cases.

Third, the Trustee's position ignores clause (iii), which specifically addresses a debtor's actual secured debt payments.[41] For purposes of calculating a debtor's disposable income under the means test in bankruptcy cases, a deduction for secured debt payments is allowed only under clause (iii). The Trustee, on the other hand, asserts that the Debtors' debt payments should be considered under clause (ii) as opposed to clause (iii), which again is at odds with the plain language of § 707(b)(2)(A)(ii)(I) and 707(b)(2)(A)(iii). And as previously noted, the amounts determined under clauses (ii) and (iii) "allow a debtor to deduct from current monthly income those expenses set out in the IRS standards, and also any payments on secured debt that will come due in the sixty months after the petition date."[42] Therefore, the IRS guidelines for tax collection purposes are directly at odds with the plain language of § 707(b)(2)(A)(ii)(I) and 707(b)(2)(A)(iii), which apply in bankruptcy cases.

---

[40] 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

[41] 11 U.S.C. § 707(b)(2)(A)(iii).

[42] *Drummond v. Welsh (In re Welsh)*, 465 B.R. at 849; *see* 6 COLLIER ON BANKRUPTCY ¶ 707.04[3] [c] at 8-9 (16th ed. 2019).

### *3. Form 122C-2 supports the Court's interpretation of the plain language of § 707(b)(2)(A)(ii)(I) and 707(b)(2)(iii)*

After BAPCPA was passed, the Judicial Conference of the United States[43] created Form B22C to assist practitioners in calculating disposable income. In 2015, the Judicial Conference updated the form as part of the Forms Modernization Project.[44] New Form 122C-2 was derived from the previous iterations of the form. Pursuant to Federal Rule of Bankruptcy Procedure 9009, "The Official Forms prescribed by the Judicial Conference of the United States shall be used without alteration, except as otherwise provided in these rules, in a particular Official Form, or in the national instructions for a particular Official Form."[45]

The Court views Form 122C-2 as an advisory opinion on how to interpret § 707(b)(2)(A)(ii)(I) and 707(b)(2)(A)(iii). Form 122C-2, line 13a directs the Debtors to use the figure in the IRS Local Standard ($497.00).[46] Line 13b then directs the Debtors to subtract the average monthly debt payment for the Vehicle ($65.38),[47] resulting in the Debtors' net vehicle ownership cost ($431.62).[48] Form 122C-2 then directs the Debtors to line 33b, where they are directed to add their average monthly debt payment back into the calculation. The Judicial Conference's approach to Form 122C-2 gives effect to the statute and supports the Court's plain-meaning interpretation.[49]

---

[43] The Judicial Conference of the United States is the principal policy making body concerning the administration of the United States Courts. It is comprised of the Chief Justice of the United States, the chief judge of each judicial circuit, the Chief Judge of the Court of International Trade, and a district judge from each regional judicial circuit. The Conference operates through a number of committees created to advise on a wide range of subjects, including rules of practice and procedure. The committee members are appointed by the Chief Justice. *See* https://www.uscourts.gov/about-federal-courts/governance-judicial-conference/about-judicial-conference. The Conference derives its authority from 28 U.S.C. § 331.

[44] The 2015 Judicial Conference Committee Notes associated with the development of Form 122C-2.

[45] FED. R. BANKR. P. 9009.

[46] Debtors' Ex. 1 (Form 122C-2, line 13a).

[47] Debtors' Ex. 1 (Form 122C-2, line 13b).

[48] Debtors' Ex. 1 (Form 122C-2, line 13c).

[49] *See Lynch v. Jackson (In re Jackson)* 853 F.3d 116 (4th Cir. 2017) (the Official Form and the statute are harmonized).

### *4. Collier's supports the Court's interpretation of the statute and of Ransom*

The leading bankruptcy treatise, *Collier's,* supports the Court's conclusion:

> The [Supreme] Court [in *Ransom*] expressly declined to decide the issue of whether a debtor whose monthly ownership expenses are less than the allowance may claim the full allowance. However, its reasoning makes it difficult to see how anything but the amount in the IRS table is to be used once the ownership allowance is found to be "applicable." The statute refers to the "amount specified" in the standards and the Court's decision described the standards as 'tables that the IRS prepares listing standardized expense amounts for basic necessities.' Although the creditor in *Ransom* argued that this amount serves as a cap, the relevant language in the decision refers to treating the standards as a cap. . . . as 'IRS practice' rather than any result dictated by the IRS standards. Since the IRS also has discretion to deviate from the standards in other ways if it chooses, including upwards, it is clear that IRS practice cannot be simply imported wholesale into the section 707(b)(2) means test.[50]

The Court agrees with *Collier's* that IRS practice cannot be imported wholesale into the means test applicable in bankruptcy cases, and it makes no sense to do so here.

### C. SUMMARY OF THE COURT'S CONSIDERATION AND ANALYSIS OF THE CONFLICTING CASES ON THIS ISSUE

As previously noted, the parties' briefs in this dispute were extensive, and many courts have weighed in with a wide range of differing analyses and conclusions. This Court has fully considered and analyzed the Trustee's position and the contrary conclusions reached by other courts. As detailed above, however, *Ransom*, the Official Forms, *Collier's*, and public policy all support this Court's plain-meaning interpretation of § 707(b)(2).

### IV. CONCLUSION

Therefore, based on the Court's findings of fact and conclusions of law, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the Trustee's Objection is hereby **SUSTAINED** in part and **OVERRULED** in part as detailed below; and it is further

**ORDERED** that the Trustee's first "disposable income" objection asserting that the Debtors

---

[50] *See* 6 COLLIER ON BANKRUPTCY ¶ 707.04[3] [c] [i] at 9 (16th ed. 2019) (footnotes omitted).

understated their gross monthly income is **SUSTAINED** and was resolved by Debtors' agreement and stipulation to amend their Plan to cure this objection by increasing their monthly disposable income to $330.24 per month with a corresponding increase of the unsecured creditors' pool to $19,814.40; and it is further

**ORDERED** that the Trustee's second "disposable income" objection asserting that the Debtors overstated their monthly deduction for "transportation ownership cost" when calculating the Debtors' projected "disposable income" under 11 U.S.C. §1325(b) is **OVERRULED**; and it is further

**ORDERED** that the Trustee's "best interest of creditors test" objection is **OVERRULED**; and it is further

**ORDERED** that a separate order shall be entered confirming the Debtors' Plan, as modified by this Memorandum Opinion and Order.